IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY E. WILLIAMS      &ast;
            &ast;
  v.         &ast;  Civil No. CCB-11-323
            &ast;
GYRUS ACMI, INC. (f/k/a ACMI &ast;
CORP.), et al.       &ast;
            &ast;
         &ast;&ast;&ast;&ast;&ast;&ast;

MEMORANDUM

Plaintiff Kimberly Williams ("Williams") brought this action against Defendants Gyrus ACMI, Inc.; Gyrus Medical, Inc.; Gyrus ACMI, LLC; and Gyrus ACMI Limited Partnership (collectively, "the Gyrus Defendants") and Olympus America, Inc. ("OAI"). Williams asserts claims for negligence, breach of express and implied warranties, and strict liability arising from an incident in which a portion of a medical instrument allegedly was left in Williams's body following a surgical procedure. Now pending before the court is the Gyrus Defendants' motion to dismiss the strict liability claims and OAI's motion to dismiss or, in the alternative, for summary judgment. The defendants' motions will be granted.

BACKGROUND

On February 8, 2008, at Portsmouth Naval Medical Center in Virginia, Williams underwent a total vaginal hysterectomy and cystoscopy. Ultrasounds performed prior to the procedure showed no evidence of a foreign object in her pelvis. (Compl. ¶¶ 12–13.) Medical records indicate the Gyrus ACMI PKS SEAL Open Forceps ("Gyrus Forceps"), which were designed, manufactured, and sold by the defendants (*Id.* ¶¶ 5–9),[1] were inserted into Williams's body during the procedure. A portion of the Gyrus Forceps fell off and was unintentionally left

---

[1] OAI contends that it was not affiliated with the Gyrus Defendants at the time of the surgery and did not participate in the design, manufacture, or sale of the Gyrus Forceps. This issue is discussed in Part II.

1

in Williams's body following the surgery. Williams reports she experienced lower abdominal pressure and pain immediately after the surgery. This pain continued over subsequent months. (*Id.* ¶¶ 14–18.)

Williams presented to National Naval Medical Center in Maryland on July 5, 2009, complaining of severe abdominal pain, nausea, and near-fainting. A CT scan revealed a foreign object in her pelvis. The following day, she underwent an operation to remove the object, which was later identified as a portion of the Gyrus Forceps, called a "shim." Williams alleges she suffered and continues to suffer physical and emotional harm because the shim remained in her body following the surgery. (*Id.* ¶¶ 19–25.)

In the instant action, Williams asserts six counts: (I) negligence; (II) breach of express warranty; (III) breach of implied warranty; (IV) strict liability—defect in design; (V) strict liability—defect in manufacture; (VI) strict liability—failure to warn.

STANDARD

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against

him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pleaded facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 1949 (internal quotations and citation omitted).

ANALYSIS

I. Strict Liability Claims: Counts IV, V, and VI

The Gyrus Defendants and OAI move to dismiss Williams's strict liability claims on the grounds that Virginia law applies to this action and Virginia has not adopted strict liability in tort for products claims. Williams contends Maryland law applies.

A. Lex Loci Delicti *Rule*

It is well established that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020 (1941). Despite a modern trend favoring alternative approaches, "Maryland adheres to the *lex loci delicti* rule" to determine the applicable law in tort actions. *Philip Morris Inc. v.*

3

*Angeletti*, 358 Md. 689, 752 A.2d 200, 230 (2000); *see also Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 651 (2007) ("We see no reason to discontinue our adherence to the principles of *lex loci delicti*."). Under this rule, "the substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207, 1209 (1983). "[W]here the events giving rise to a tort action occur in more than one State," the court must "apply the law of the State where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 911 A.2d 841, 845 (2006); *see also Angeletti*, 752 A.2d at 231; Restatement (First) of Conflict of Laws[2] § 377 (1934) ("The place of the wrong is . . . where the last event necessary to make an actor liable for an alleged tort takes place.").

The place of injury need not be the place where the wrongful act occurred. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (citations omitted); *see also* Restatement (First) of Conflict of Laws § 377 note 1. Rather, an injury is deemed to occur where the plaintiff first suffers harm, even if the tortious conduct subsequently results in additional or more severe harm elsewhere. *See Burnside v. Wong*, 412 Md. 180, 986 A.2d 427, 438 (2010) ("[A] medical injury may occur 'even though all of the resulting damage to the patient' has not yet occurred." (quoting *Green v. N. Arundel Hosp. Ass'n*, 366 Md. 597, 785 A.2d 361, 368 (2001)); *see also St. George v. Pariser*, 253 Va. 329, 484 S.E.2d 888, 890 (1997) ("[A]n injury is deemed to occur . . . whenever any injury, however slight, is caused by the negligent act, even though additional or more severe injury or damage may be subsequently sustained as a result of the negligent act." (citation omitted)); Restatement (First) of Conflict of Laws § 377 note 1.

---

[2] Although the First Restatement of Conflict of Laws is "'of merely historical interest elsewhere,'" because Maryland has retained the traditional rule of *lex loci delicti*, it "'continues to provide guidance'" for choice-of-law determinations in this state. *Angeletti*, 752 A.2d at 231 n.25 (quoting *Black v. Leatherwood Motor Coach Corp.*, 92 Md. App. 27, 606 A.2d 295, 301 (Ct. Spec. App. 1992)).

The allegations of the complaint make clear that Williams first sustained injury from the shim while in Virginia. As courts in other jurisdictions have observed, where a foreign object is erroneously left in a patient's body during a medical procedure, the legal injury occurs at the time of that procedure because the patient can immediately bring suit for the object's removal. *See, e.g.*, *Neubauer v. Owens-Corning FiberGlas Corp.*, 686 F.2d 570, 572–73 (7th Cir. 1982) (noting that Wisconsin courts have found the injury to occur "at the time the foreign object was placed in the body" because "even if [the object was] causing no present discomfort, the plaintiff could sue immediately for [its] removal"); *Melfi v. Mount Sinai Hosp.*, 64 A.D.3d 26, 877 N.Y.S.2d 300, 309 (App. Div. 2009) ("In [foreign-object] cases, it is indisputable that actual injury occurs when the foreign object is left inside the body."); *Estate of Genrich v. OHIC Ins. Co.*, 318 Wis. 2d 553, 769 N.W.2d 481, 487–88 (2009); *Raftery v. Wm. C. Vick Constr. Co.*, 291 N.C. 180, 230 S.E.2d 405, 409 (1976).[3] Therefore, even if she did not begin to experience pain or other symptoms from the shim's presence until she relocated to Maryland, Williams's injury occurred at the time the object was left in her body.

Moreover, the allegations demonstrate Williams in fact did begin to experience physical symptoms from the shim's implantation while in Virginia. She alleges that immediately following the surgery, while at the Portsmouth Naval Medical Center in Virginia, she suffered abdominal pain and pressure. This pain, she claims, did not subside over the following months. Even viewing the allegations in the light most favorable to the plaintiff, this court must infer that Williams's pain was not solely a normal aspect of her recuperation from surgery, but rather at least in part the result of the foreign object left in her body. It is immaterial, then, that the object's presence was uncovered in Maryland or that the shim was removed in this state.

---

[3] This conclusion is separate from the question of whether the statute of limitations begins to run before the patient realizes that the object was left in her body. *See Melfi*, 877 N.Y.S.2d at 309; *Estate of Genrich*, 769 N.W.2d at 484–85; *Raftery*, 230 S.E.2d at 409–10.

Williams's injury occurred in Virginia. Accordingly, under the rule of *lex loci delicti*, Virginia law governs the plaintiff's claims.

B. *Public Policy Exception*

Williams argues that if Virginia law governs her claims under the principle of *lex loci delicti*, Maryland public policy so strongly favors strict products liability that this court must refuse to apply Virginia law on this issue. The Maryland Court of Appeals has recognized a public policy exception to its general choice-of-law rules. *Lab Corp.*, 911 A.2d at 848. In acknowledging this exception, however, it has "cautioned . . . that 'merely because Maryland law is dissimilar to the law of another jurisdiction does not render the latter contrary to Maryland public policy.'" *Id.* (quoting *Bethlehem Steel Corp. v. G.C. Zarnas & Co.*, 304 Md. 183, 498 A.2d 605, 608 (1985)). Instead, "'for another state's law to be unenforceable, there must be a 'strong public policy against its enforcement in Maryland.'" *Id.* (quoting *Bethlehem Steel*, 498 A.2d at 608); *see also Texaco, Inc. v. Vanden Bosche*, 242 Md. 334, 219 A.2d 80, 83 (1966) ("Recent legal thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed."). The party seeking the application of the public policy exception bears the "heavy burden" of demonstrating the existence of a sufficiently strong public policy. *Texaco*, 219 A.2d at 84.

In the choice-of-law context, the Maryland Court of Special Appeals has defined "public policy" as "no more and no less than what is believed by the courts and the legislature to be in the best interest of the citizens of this State." *Linton v. Linton*, 46 Md. App. 660, 420 A.2d 1249, 1251 (Ct. Spec. App. 1980). The Maryland Court of Appeals nevertheless has noted that the "'[d]eclaration of the public policy of the State is normally the function of the legislative branch of government.'" *Bethlehem Steel*, 498 A.2d at 608 n.2 (quoting *Jones v. Malinowski*, 299 Md.

257, 473 A.2d 429, 437 n.4 (1984)). Thus, "absent a statement by the legislature that something is contrary to Maryland public policy," Maryland courts are "not hesitant to enforce another state's law," even if contrary to Maryland law. *Motor Club of Am. Ins. Co. v. Hanifi*, 145 F.3d 170, 180 (4th Cir. 1998).

For example, in *Harford Mutual Insurance Co. v. Bruchey*, 248 Md. 669, 238 A.2d 115 (1968), the Maryland Court of Appeals concluded that Maryland public policy did not require it to ignore Virginia law, which barred loss-of-consortium claims, in favor of Maryland law, which recognized such claims, noting that loss of consortium was a common-law doctrine and possibly "anachronistic." *See id.* at 118; *see also Erie Ins. Exch.*, 925 A.2d at 657 (finding the public policy exception did not require the application of Maryland's cap on non-economic damages to a claim involving an uninsured/underinsured motorist insurance policy where "[t]he Maryland General Assembly has not addressed specifically the issue of the applicability of the non-economic damages cap to claims for uninsured/underinsured motorist damages"). In contrast, in *Laboratory Corp. of America v. Hood*, 911 A.2d 841, the Maryland Court of Appeals found that public policy required a court to disregard the law of the place of injury—North Carolina—which did not permit so-called wrongful-birth suits, in favor of Maryland law recognizing this cause of action in part because the right to bring this type of claim "flow[ed] not only from this Court's considered view but [also] from statute." *Id.* at 850.

Williams has failed to demonstrate that Maryland's public policy in favor of strict products liability is so strong that this court must disregard Virginia law. Strict products liability was adopted in Maryland by judicial decision, not legislative action, so the General Assembly has failed to provide the clear directive ordinarily required to trigger the public policy exception. *See generally Phipps v. Gen. Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976) (adopting strict

7

liability as set forth in Restatement (Second) of Torts § 402A). Nor can it be said that Virginia law in products cases is so violative of Maryland policy as to warrant the application of the exception. Although it refuses to adopt strict liability in products cases, Virginia permits claims for breach of implied warranty that serve as the "functional equivalent" of strict liability. *Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1045 n.6 (4th Cir. 1983); *see also Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1114 (4th Cir. 1988) (citing *Lust v. Clark Equip. Co.*, 792 F.2d 436, 438–39 (4th Cir. 1986)). Indeed, in adopting a theory of strict products liability, the Maryland Court of Appeals noted that, because courts had dispensed with the requirement of privity, warranty law allowed for recovery in most cases in which strict liability would apply. Even so, it adopted a theory of strict liability because "various other requirements and limitations imposed by contract law may be encountered" by a plaintiff bringing an action for breach of warranty. *See Phipps*, 363 A.2d at 961. The possibility that a plaintiff may, on occasion, encounter an additional requirement or limitation in bringing a claim as a result of an injurious product does not establish that Virginia law is sufficiently contrary to Maryland policy to warrant an exception from normal choice-of-law principles, particularly as the Maryland legislature did not articulate the relevant public policy.

Accordingly, Counts IV, V, and VI will be dismissed.

II. OAI's Liability on Counts I, II, and III

OAI moves for dismissal or judgment in its favor on the remaining claims because it was not yet affiliated with the Gyrus Defendants at the time the claims arose. Attached to its motion, it provided the affidavit of Trevor Tormann, the Executive Director of Corporate Finance and Accounting for Olympus Corporation of the Americas ("OCA"), the parent of OAI. Tormann states that OCA acquired control of the Gyrus Defendants on July 31, 2008, and he provides the

certificate of merger. (Def. OAI's, Mot. Dismiss or, Alt., Mot. Summ. J., Ex. 1, Tormann Aff. ¶¶ 1–6 & Attach.) Before reaching the merits, it must first be determined whether the court may consider the affidavit at this stage in the case.

The affidavit is neither attached nor integral to the complaint, so it cannot be considered on a motion to dismiss under Rule 12(b)(6). *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted). A motion to dismiss may be treated as a motion for summary judgment so long as there is notice to the parties "and 'a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)(6)). Where, as here, a motion is captioned as a motion to dismiss or, in the alternative, for summary judgment, the opposing party is placed on notice of the possibility that the motion may be considered under Rule 56. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

The plaintiff argues the court should not dismiss OAI at this stage in the proceeding, indicating she believes she has not had a sufficient opportunity for discovery. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). This litigation is in its early stages, and little discovery has occurred. Williams, however, has not submitted an affidavit under Rule 56(d) demonstrating the need for discovery regarding the relationship between OAI, OCA and the Gyrus Defendants. *See Laughlin*, 149 F.3d at 261 ("Because appropriate notice was ample, Laughlin's attorney had the responsibility, if he thought further discovery was necessary . . . , to make a motion under Rule 56(f)[, now Rule 56(d)]."). Nor has she challenged the veracity of Tormann's affidavit. Rather, in her opposition, she argues there is a question of fact as to whether OAI was affiliated with the Gyrus Defendants at the time her claims arose because she disputes the time of her injury. As

discussed above, however, it is evident the plaintiff was injured at the time of her first surgery on February 8, 2008. Therefore, there is no need for further discovery on the dispositive issue, and this court may properly convert the motion to one for summary judgment.

Under Rule 56, judgment may be granted in OAI's favor if OAI shows "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute that, at the time plaintiff's claim arose, OAI was not affiliated with the Gyrus Defendants. The plaintiff presents no legal basis for holding a defendant liable for liabilities of its corporate sibling that predate the sibling's acquisition by the defendant's corporate parent. *Cf. Harris v. T.I., Inc.*, 243 Va. 63, 413 S.E.2d 605, 609 (1992) (discussing exceptions to the general rule of nonliability of successor corporations). Accordingly, Olympus may not, as a matter of law, be held liable to plaintiff for her injuries.

For the foregoing reasons, Counts IV, V, and VI will be dismissed as to all defendants, and summary judgment will be granted in favor of Olympus on the remaining counts. A separate order follows.

June 9, 2011 /s/
Date Catherine C. Blake
United States District Judge